*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEEGAN MAITLAND, by next friend MEGHAN
MAITLAND,

       Plaintiff-Appellee,

v

HOLLY JASKIERNY, D.O., and JOSEPH
KINGSBURY, D.O.,

       Defendants,

and

GENESYS REGIONAL MEDICAL CENTER,

       Defendant-Appellant.

UNPUBLISHED
February 8, 2024

No. 348216
Genesee Circuit Court
LC No. 18-110537-NH

Before: REDFORD, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

## ON REMAND

In lieu of granting leave to appeal, our Supreme Court vacated Part III of this Court's judgment and remanded this case for our reconsideration in light of the Court's recent decision in *Markel v William Beaumont Hosp*, 510 Mich 1071; 982 NW2d 151 (2022), of the issue whether Dr. Jaskierny acted as an ostensible agent of Genesys Regional Medical Center (Genesys) when she provided the alleged negligent medical services on March 15, 2012. In all other respects, the Court denied leave to appeal because it was not persuaded that the remaining questions required review.[1]

---

[1] *Maitland v Jaskierny*, ___ Mich ___; 996 NW2d 480 (2023).

-1-

We incorporate by reference the facts stated in our previous opinion.[2]  In that opinion, we concluded that, under *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240; 273 NW2d 429 (1978), and this Court's caselaw, plaintiff failed to establish that Dr. Jaskierny was an ostensible agent of Genesys because no evidence demonstrated that Genesys committed any act or omission that caused plaintiff to believe that Dr. Jaskierny was Genesys's agent or employee.  Indeed, as explained in our previous opinion, the evidence undermined all of the bases on which plaintiff relied and she could not point to any act or omission by Genesys that could have caused her to reasonably believe that Dr. Jaskierny served as Genesys's ostensible agent.

In *Markel*, 510 Mich at 1071, a medical malpractice case brought by a patient who obtained hospital emergency room care from a hospitalist and sued the hospital for the alleged negligence of the hospitalist on a theory of vicarious liability based upon ostensible agency, our Supreme Court clarified the ostensible agency doctrine.  The Court stated the test for establishing ostensible agency as follows:

> [First] The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; [second] such belief must be generated by some act or neglect of the principal sought to be charged; [third] and the third person relying on the agent's apparent authority must not be guilty of negligence. [*Markel*, 510 Mich at ___; slip op at 1, quoting *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 253; 273 NW2d 429 (1978) (quotation marks and citations omitted; alterations in original).]

Our Supreme Court explained that the patient in *Grewe* had no preexisting patient-physician relationship with the treating physician.  The patient apparently merely showed up seeking emergent care.  Our Supreme Court quoted the proposition that, for determining ostensible agency, "the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems." *Markel*, 510 Mich at 1071, quoting *Grewe*, 404 Mich at 251.  Our Supreme Court noted that in *Grewe*, 404 Mich at 253-255, it found significant that nothing put the patient on notice, or should have, that the doctor was an independent contractor and not an employee of the hospital. *Markel*, 510 Mich at 1071.  Our Supreme Court explained:

> A patient who has clear notice of a treating physician's employment status or who has a preexisting relationship with a physician outside of the hospital setting cannot reasonably assume that the same physician is an employee of the hospital merely because treatment is provided within a hospital. *Id*.
>
> *  *  *
>
> The rule from *Grewe* is that when a patient presents for treatment at a hospital emergency room and is treated during their hospital stay by a doctor with whom

---

[2] See *Maitland v Jaskierny*, unpublished per curiam opinion of the Court of Appeals issued July 8, 2021 (Docket No. 348216).

they have no prior relationship, a belief that the doctor is the hospital's agent is reasonable unless the hospital does something to dispel that belief. Put another way, the "act or neglect" of the hospital is operating an emergency room staffed with doctors with whom the patient, presenting themselves for treatment, has no prior relationship. *Markel*, 510 Mich at 1071-1072.

* * *

[A] core aspect of our holding in *Grewe* was that an agency is ostensible when the principal *intentionally or by want of ordinary care*, causes a third person to believe another to be his agent who is not really employed by him. *Markel*, 510 Mich at 1072 (quotation marks, alterations, and citation omitted).

* * *

[*Grewe*] held that when a patient presents at the emergency room for treatment, the patient's belief that a doctor is the hospital's agent is reasonable unless dispelled in some manner by the hospital or the treating physician. *Markel*, 510 Mich at 1072.

With this clarification of the law of ostensible agency in mind, we now turn again to the facts of this case and reconsider whether Genesys may be held vicariously liable for the underlying alleged medical malpractice by Dr. Jaskierny on the theory of ostensible agency. The record reflects that Joseph A. Kingsbury, DO, PC (Kingsbury PC) employed Dr. Jaskierny in private practice and she had hospital privileges at and worked for Genesys part time. Plaintiff Meghan Maitland testified that she found Dr. Jaskierny on her insurer Blue Cross Blue Shield's website in a list of doctors from which she concluded that Dr. Jaskierny was a "Genesys doctor." The record also indicates that Dr. Jaskierny provided prenatal care at the Kingsbury PC offices within Genesys's medical office building. Since 2006, Dr. Jaskierny had an office in the suite leased by Kingsbury PC. Although she had a Genesys badge, Dr. Jaskierny testified that, at times relevant to this case, she usually left it in her car because she used it to enter the parking lot and probably did not wear it from July 1, 2011 through March 15, 2012. She only started wearing it later when accessibility to certain parts of the hospital became an issue.

When Meghan went into labor she called Dr. Jaskierny's office to let her know. Meghan went to the hospital for her baby's delivery, she signed a consent form that identified Dr. Jaskierny as her private physician. Dr. Kingsbury performed the baby's delivery because he was on call. Later, the baby suffered serious complications. Plaintiff attributes the child's condition to Dr. Jaskierny's alleged negligent prenatal care provided to Meghan. Plaintiff sued Dr. Jaskierny and alleged that Genesys had vicarious liability for Dr. Jaskierny's negligent medical treatment of Meghan. Genesys defended on the grounds that Dr. Jaskierny was not its ostensible agent, actual agent, or employee when she treated Meghan and committed the alleged malpractice. Genesys moved for summary disposition under MCL 2.116(C)(10). The trial court denied the motion, concluding that an issue of fact for trial existed regarding what plaintiff believed respecting agency and whether her belief was reasonable. From that decision, Genesys appealed.

In this case, unlike the plaintiffs in *Grewe* and *Markel*, Meghan had an established patient-physician relationship with Dr. Jaskierny who provided her prenatal care at Kingsbury PC's

offices. Meghan did not merely go to Genesys and obtain medical services from a doctor there on staff. She treated with Dr. Jaskierny for several months at the Kingsbury PC offices before the alleged malpractice occurred. The record indicates that the alleged malpractice occurred at the Kingsbury PC offices.

Although the Kingsbury PC offices were in the Genesys facility, that fact alone does not establish that Dr. Jaskierny provided medical services within the hospital setting as an ostensible agent of Genesys. The concept of "hospital setting" is not and should not be interpreted so broadly as to make a medical practice's lease and use of office space in a hospital building or facility dispositive of whether the medical practitioner was an agent, actual or ostensible, of the hospital. Neither *Markel* nor *Grewe* stand for such a proposition. The concept of "hospital setting," as discussed in *Markel* and *Grewe*, relates to services performed on a patient who has been admitted for treatment in the hospital, not merely a patient who obtained services within a building or facility owned by the hospital. The "act or neglect" of the hospitals in *Markel* and *Grewe* consisted of operating an emergency room staffed with doctors with whom the admitted patients had no preexisting relationship. *Markel* and *Grewe* indicate that the preexisting patient-physician relationship must focus on the relationship itself, when formed and where the services pertaining to that relationship were provided. In this case, Meghan selected Dr. Jaskierny as her doctor from a third party's website. She made assumptions based on that website about the relationship between Dr. Jaskierny and Genesys predominantly because of the location of Dr. Jaskierny's office, but admits that she obtained prenatal care at the Kingsbury PC offices for several months before the alleged malpractice occurred related to a prenatal test performed at the Kingsbury PC offices. Under *Markel* and *Grewe*, because Meghan had such a preexisting patient-physician relationship, it is highly questionable that she could reasonably believe that Dr. Jaskierny was Genesys's agent. "A patient who has clear notice of a treating physician's employment status or who has a preexisting relationship with a physician outside of the hospital setting cannot reasonably assume that the same physician is an employee of the hospital merely because treatment is provided within a hospital." *Markel*, 510 Mich at 1071. Under the circumstances presented in this case, we are not persuaded that Genesys "*intentionally or by want of ordinary care*," *id*. at 1072, caused Meghan to believe that Dr. Jaskierny was its agent, or had an affirmative duty to dispel Meghan's idiosyncratic belief that Dr. Jaskierny was an agent of Genesys.

The record reflects that Genesys did not engage in any act or omission that led Meghan to believe an agency relationship existed between Genesys and Dr. Jaskierny. Meghan selected Dr. Jaskierny based on her search on Blue Cross Blue Shield's website, not Genesys's website. Further, the location of Dr. Jaskierny's office, without more, cannot establish that Meghan reasonably believed that Dr. Jaskierny was Genesys's agent. Nothing in the record indicates that Genesys did anything on which Meghan relied to form her belief that Dr. Jaskierny was Genesys's agent. Kingsbury PC generated the prenatal care records, not Genesys. Meghan has not established that she held a reasonable belief that Dr. Jaskierny was Genesys's agent. The evidence simply does not support such a conclusion nor does it present a question of fact for trial. The record does not reveal any act or omission by Genesys that would have enabled Meghan to form a reasonable belief that Dr. Jaskierny was Genesys's agent. Plaintiff has failed to establish that Genesys engaged in any act or omission that generated Meghan's belief that Dr. Jaskierny was Genesys's agent, let alone a reasonable belief of such. The record in this case does not support a finding of ostensible agency or a genuine issue of material fact for trial. Accordingly, the trial

court erred by denying Genesys's motion for summary disposition on the issues of Dr. Jaskierny's ostensible agency.

For these reasons, we reverse the trial court's order denying Genesys's motion for summary disposition and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Jane E. Markey
/s/ Stephen L. Borrello